Please be seated. The next case is Cotromano v. Pratt & Whitney. Mara Hatfield is here for the appellants. Sean Gallagher is here for the appellee, Pratt & Whitney. And Ms. Hatfield, you may begin your argument. Thank you. Good morning, Your Honors. May it please the Court. I'm Mara Hatfield on behalf of the Plaintiff Appellants, the Cotromanos, and with me is Jack Carolla. Together we represent these families for over 15 years now. These families came to the Court in 2013 to make a broad-based claim of a cancer cluster affecting their entire neighborhood. Since 2010, with the declaration of the cancer cluster, they have lived with the Damocles disease of a cancer cluster and the threat of radioactive materials negligently handled by Pratt & Whitney over their head. That is pursuant to the case law established by this Court, a per se class claim. It's very clear in the cases cited in our briefs from this Court, Johnson v. Georgia Highway and Cherry v. Dometic, that the Court committed error when it did not certify our cancer cluster claim based on its erroneous findings, which linked our cancer cluster stigma claim with the claim of related litigants consolidated under Rule 42. If we affirm the trial verdict, though, do we even get to the class cert claims? In other words, if we affirm the verdict against your clients individually, are we even able to reverse the certification decision? Your Honor, I believe that there is case law that states that as long as you are not affirming the verdict based on issues related solely to the individual claims as opposed to what would have been the class claims, that you can still consider the class certification issue. But in this instance, I don't think that the case should be affirmed because the very particular factual misunderstandings of the Court which led him to the wrong erroneous Daubert rulings and erroneous jury instructions is the same which led him into the wrong. So let's talk about those. Because I think, from my understanding, I think if we affirm on the trial stuff and there's no named plaintiffs left, essentially, there'd be no class to certify at that point. So I think it would be helpful for me to focus on those things that you just discussed. Yes, Your Honor. Thank you. So in our briefing, we spent most of our briefing talking about the Daubert rulings and we began with the Daubert rulings and what I would like to do is I would like to start with the jury instruction issues and the jury verdict issues because I think it's helpful to Can I just ask you a question before you start? Sure. I just want to set sort of the ground level. You agree that this is an abusive discretion standard? Yes, Your Honor. I believe that the Daubert rulings is an abusive discretion standard. I believe that the standard on the jury instructions and the jury verdict issue, there is some debate between the parties as to whether the plaintiffs preserved their objections or whether those were waived. And I think we killed two birds with one stone here. There was no objection. In fact, the jury instruction that was submitted is pretty much the same instruction that the plaintiffs requested. Your Honor, the question one on Chapter 376, there is case law in the Eleventh Circuit that states as long as you have objected ahead of time on the instructions to the same thing that appears in the verdict form, you do not have to reinstate your objection when presented with the verdict form. So the instruction on question one that the district court adopted pretty much suggested the same language nearly verbatim that you requested. The part that we did not request and the part that we had previously objected to repeatedly and did not need to reinstate that objection was after the Department of Environmental Protection language in question one where it says was released into or upon the acreage. It should have just ended with was just released. The law is I thought the issue was at least as to the first question you're objecting to on the verdict form was from Pratt. I thought that was the issue. And I think I read the record the same way Judge Wilson does, which is from Pratt was suggested by you as an alternative to what it had originally been. And under those circumstances, I think we treat that as an invited error that we don't Yes, Your Honor. That is I'm sorry that our brief was not clear. The concern that we have is into the acreage. There were several, several times during the prior briefing in the initial charge conference in the charge conference when we were presented with this verdict form where we repeatedly reminded the court that according to Adnolfi and according to curd, the release does not need to go into the acreage. I believe I said that five or six times. And moreover, my friend on the other side agreed with me. This is in the record. This is in volume 10 of the of the appendix. The court asked me specifically. So you're saying it does not need to be released into the acreage for a chapter 376 violation. And I said, Yes, Your Honor. That's my understanding of curd. That's my understanding of Adnolfi. This is at 2083 to 2084 of our appendix. The defendant also agreed that this was law of Adnolfi, the related case that we do not need to show that the release happened. We do need to show that it kind of came from Pratt Whitney. We did suggest that language, but we do not need to show is that it occurred in the acreage. Once Pratt Whitney releases material onto their property in a way that is a violation of the DEP regulations, we have to show that that release somehow caused an issue in the acreage. And our brief suggests that if you had if we had just ended with prohibited by the Florida Department of Environmental Protection on the chapter 376 question one and then proceeded to question two, that takes care of the causation. It is a very similar argument to our argument regarding the negligence claim and the error on that interrogatory verdict. We specifically, repeatedly requested not to have a special interrogatory verdict. When we were presented with this interrogatory verdict, my friend on the other side requested that it include a reasonable care standard in the unnecessary question five. And the court... Can you show me where... I'm sorry. I'm looking at the section of your brief dealing with the jury instruction issue. This is starting at page 52 of your brief. And I don't want to take up your time here. You can do this on reply if you'd like to. Show me where that you are objecting to or where your brief has brought up this issue that you're discussing now. As I understood it, the first question dealt with this issue of who it was from. And the second question that you objected to dealt with adding in the breach element as part of the connection to the transport. That's what I understood your argument to be. On page 54, your honor, it says, as the chapter 376 claim, plaintiffs were erroneously required to demonstrate that Pratt & Whitney unlawfully released our discharge or polluted condition into the acreage. And I apologize. I should have put that in quotes, but that is the problem that we have with question number one. And it is very similar to the problem that we have with the entire question that is posed under the negligence claim question number four. Both of those, regardless of whether we had objected below, both of those questions reflect a mistake of law. It is fundamental error. It is clear, as my friend on the other side agreed with me at the charge conference, that you do not need to show that a release occurs by chapter 376 and get chapter 376 liability in the target property. This is clear in Curd v. Mosaic. This was clear in the Adnolfi case, which remanded the related case that ours was later consolidated with. So question- Wasn't that your whole theory? I mean, the whole theory was, as I understand it, that dirt, for lack of a better word, was taken from Phil, was taken from the offending property, was supposed to be sent to these two places that would remediate the dirt, but instead, because the transport company either was mixed with the development of the acreage or because it was just dumping, dumped some of that dirt on the acreage property, right? Isn't that the theory of the case? Yes. But our theory of our case for the liability for Pratt Whitney was that it mishandled and misappropriated and disposed of radioactive materials on its own property. And from that point, however it gets from its property to the acreage does not have to be the chapter 376 liability. That becomes a question of causation. I know, but if it took dirt and put it in Maryland, that would have nothing to do with anything to do with your clients, right? The only thing that it has to do with your clients is because the dirt went to its property. That's where they mishandled it by putting it on your property, right? No, they mishandled it on their own property. And you could have water, for example, as in the Adnolfi case, come along and take it to another person's property. You could have a rogue truck. You could have a truck stealing soil from your property. And you are still liable for the chapter 376 violation that occurred on your property. Their chapter 376 violation did not occur with the transporters. Their chapter 376 violation occurred in the wrongful remediation of their own property, beginning with the disposal of the radioactive materials in 1964. Right, disposal. That's the key. They have dirt on their property because it's ground, and they tested on it. At some point, that becomes radioactive, so they do something with it. Here it was the disposal of that that ended up in your client's property. That's the only thing that has been alleged here, is it not? Am I missing something? No, Your Honor. But what they did was they did not tell the transporters about the radioactive material. It's not like Pratt Whitney said, oh, now we're going to transport radioactive material to the acreage, and we don't have to prove that. What we have to prove was that they discharged material in violation on their own property. So I am 26 seconds over my time. May I finish answering this question? You can finish answering the question. So the law is clear that it does not need to be in the acreage. The transgression needs to happen on their property. And that is the same with the third interrogatory. They misstate the law. And what we would ask the court to do is to look at the verdict form and ask why question one, if it ends at protection, can't simply proceed then to question two to deal with the issue that you're bringing up, Your Honor, about how do we show it then in the acreage? That's a causation question. That is covered in question two. The same thing happens on questions four through six. Question five is a mistake of law. According to Kerr v. Mosaic, it is not an element we need to prove. It is very clear that that is a mistake of law. All right. You've reserved some time for rebuttal. Ms. Hatfield, we'll hear from Mr. Gallagher. Good morning. Sean Gallagher for Raytheon Technologies doing business as Pratt & Whitney. The court should affirm the judgment based on the jury verdict in this case because there was no abuse of discretion in the district court's construction of a verdict form or the district court's rulings on the admissibility of expert testimony and certainly no error that could be shown to have affected the jury's verdict which was based on a factual finding that no soil with radioactive material was ever transported to the acreage. That wasn't their theory of liability though, right? Their theory of liability is that there was wrongful remediation on their own Pratt & Whitney's own property. If that's the case, I'm looking at the interrogatory's negligence claim question number five, the court should not have included the last six words in that interrogatory, transported to locations in the acreage. The jury made a determination that there was no transportation of the radioactive materials to the acreage. It seems like that's a pretty important part of their case, that pretty much got at their case having that language in the interrogatory if it wasn't their theory of liability. Their theory of liability, Your Honor, did not stop with the conduct at the Pratt & Whitney facility. Their theory was that we caused a whole bunch of cancers in the acreage community and for that as a matter of causation, their theory was at core that Raytheon did something with radioactive material at its own facility in West Palm Beach to cause a cancer cluster in the acreage residential community some five to 14 miles away and that in turn caused a diminution in the value of their homes at the stigma from that cancer cluster. So their claim did not stop at our property line. It required as a matter of causation and it was a convoluted theory of causation but it required the following. They had to show that Raytheon mishandled radioactive material but as a result, that radioactive material ended up in the dirt at Pratt & Whitney's facility and specifically for their theory, it was that the radioactive material ended up in dirt that happened also to be contaminated with jet fuel which was removed from the facility because it was contaminated with jet fuel and taken by truckers to an incinerator for thermal remediation. But not transported to the acreage. Well, their theory was that notwithstanding the truckers testimony, sworn testimony that they took it to the incinerator and the manifests signed by the truckers and the incinerator facility employees and the obvious incentive that the truckers had to actually take it where they were paid to take it, that notwithstanding that, these truckers diverted their truckloads of soil with jet fuel in it and dumped it in the acreage. And then from there, their theory was children were exposed to radioactive material at low levels present in the soil that somehow caused brain cancer, etc. Okay, now I'm confused now. The theory of liability as Ms. Hatfield alleges does not require that they prove that the radioactive material ended up in the acreage. That's not true? That's categorically untrue. It's absolutely a requirement for their case that it ended up in the acreage just as a matter of a causal chain. Part of the confusion for me, and I have similar questions to Judge Wilson, is, and if you could separate out, there were different theories for the Section 376.313 violation and the negligence claim. So the negligence claim, as I understand it, is as you've described. It required transportation to show that was the negligence that somehow the dirt didn't end up at the remedial sites. They ended up instead mixed in at the acreage, right? So what was the theory for the statutory violation, which is the basis of question one? They were seeking the exact same relief on their statutory claim as... No, the relief, that's not the question. What's the theory of violation? So it's not liability because it's not negligence. What was the violation theory for how your client violated 376.313? So the statute requires causation of damage. It does not create a cause of action, a private cause of action, Question one doesn't, I apologize for interrupting, but question one doesn't deal with causation. It does only in the sense that it requires the first step in the causal chain that is completed in question two of the verdict form, which required them to show, and unobjected to by them, by the way, either on appeal or below, question two of the verdict form required them to prove that we caused the cancer cluster. And that could only happen if there was transport of the soil to the acreage. It was a necessary step in the causal chain that they alleged. Did they, where is that alleged in their complaint or in a pretrial document that that was, they're saying that there was a violation by either discharging the dirt or the condition of the pollution on the property itself was caused the cancer because the dirt ended up on the property and that is what caused the cancer? I do not have a citation to the complaint, Your Honor, but I can tell you that their argument is that the question one, the part of question one that says to the acreage is unnecessary because they agreed that question two, which required causation of the cancer cluster, covered that element of their case. Okay, but what they're still saying is it didn't require, for instance, I could think of a case, I'm not saying this is one, where nuclear radioactive material was handled on my property. It was mixed in with the dirt on my property. I mishandled that dirt on my property. And as a result of that, neighbors next door got sick. I could see that theory happening. I'm not saying this was that case, but that wouldn't require that the dirt be delivered to or be put in or that the fill be on the acreage itself. Yes, Your Honor, and that is in fact not this case, as the plaintiffs or the appellants argue in their brief to this court at page 24. They say plaintiffs allege that the acreage cancer cluster was caused by Pratt & Whitney's radioactive material. Their claim here was not that there was a regulatory violation and a release at our property. I didn't hear anything in there about the radioactive material ending up at the acreage itself. You said that. Well, Your Honor, our property is located 5 to 14 miles away from the residential community in which these cancers allegedly arose. And none of the residents who had cancer ever visited our property. So the only way they could allege causation of the cancer cluster would be with transit. Excuse me? Isn't that more of an argument for the jury? Yes, and the jury found for us on the question of transport. That is a necessary element. Yeah, they did because the special interrogatory submitted to the jury said you had to require transportation to locations in the acreage. Yes, Your Honor, because the verdict form tracked the theory of the case that the plaintiffs told the district court below was their claim and they told this court. Show me where that is. If you're right, then I think you're right. But if you're not right, then they may be right. Standing here right now, Your Honor, the best I can give you is that they said to the district court and they have said to this court that the portion of question 5 and question 1 that deal with transport were unnecessary because the transport portion of that is comprised within causation of the cancer cluster, which is covered by question 2 of the verdict form on the statutory claim and question 6 of the verdict form on the negligence claim.  And the verdict form should have an element of causation of the cancer cluster and it is unnecessary to have a separate verdict question on transport because it is necessarily subsumed within the question of causation. Was that their theory of the case either in opening or in closing that the radioactive material was transported into the acreage or was their theory of the case either in opening or closing that the radioactive material somehow leached into the acreage? Their theory in opening, their theory in closing, their theory throughout was that there was soil with radioactive material transported to the acreage and that as a result of that, that it was diverted to the acreage and that as a result of that, there was a cancer cluster. So I would like to turn to the alternative, unless there's other questions on the verdict form or their essential theory of the case, I would like to turn to the alternative grounds on which the court can and should affirm and that is that appellant's claims all arise under and are governed by the Price-Anderson Act which creates an exclusive federal cause of action for radiation injury, to use the language adopted by this court in the Roberts decision. Can I ask you a question though, doesn't that also depend on the answer to this question we've been debating which is your argument, and I'm not saying whether your argument is right or not, but your argument is because this claim depends on transporting this material to somewhere else that ultimately got mixed in, it is an arising out of claim under Price-Anderson Act and therefore preempted. Their response is that under the judge, then Judge Gorsuch's case from the 10th Circuit, that under Cook, there's sort of an exception for what I'll call like nuisance kind of claims, where that if you live next door to the property, to the offending property, and there's a release on the offending property, regardless of whether anyone got injured from that, there's an exception for property diminution claims that don't necessarily arise out of what happened with the nuclear material or waste. Do I have the arguments between you guys right? Sort of, I think. I think their view on Cook is that because they're only seeking stigma damages, somehow they're not raising a Price-Anderson Act claim or public liability action. Right. But your response though is they're not arguing the one in Cook because in Cook, all you're saying is I'm next to something and because I'm next to something bad, kind of like a Chernobyl claim, I'm next to something bad and therefore my property is now worthless. You're saying that's not what they argued. They argued that the dirt itself, the radioactive material itself made it to my property and that that makes it different because my damages are now arising out of the nuclear waste itself, right? Not quite, Your Honor. Tell me how I got that wrong. Our argument is that this is a claim for bodily injury, namely the cancer cluster or the specific cancers like Cynthia Santiago's that were required as an element of their claim under question two of the verdict form that we cause the cancer cluster or question six of the verdict form. But the cause of it went to whether that you're then cause of the diminution of the property value. In other words, if you didn't cause the cancer then you wouldn't be responsible for the diminution in value, right? Isn't that the basis of it? Yes, but the Price-Anderson Act doesn't cut so finely, Your Honor. Neither did this court in Roberts or the Pineris decision. What the Price-Anderson Act requires is that you have a public liability action that's any suit asserting any legal liability arising out of a nuclear incident which is in turn defined in 42 U.S.C. section 2014 subsection Q as a nuclear incident means any occurrence causing bodily injury. Their claim here is a suit for legal liability asserting bodily injury as a result of the release of radioactive material. It is squarely within this court's holding in Roberts and frankly Pineris. That seems to be because the material ended up on their property, but if the theory is not that, if the theory is just this was all mishandled by Pratt & Whitney and that sort of release or mishandling has damaged us because no one wants to live in our property anymore and no one will buy it that seems to be closer to what Justice Gorsuch said was carved out in Cook. It would be if that were their theory, but their theory as reflected in the verdict form and as reflected in their briefs to this court. This comes down to the theory. We have to run down what actually was litigated in front of this court. As I think Judge Legault asked, what was said in opening, what was said in closing, what the pretrial was, what was said in the class cert motion, what was said in the complaint. That all matters for what the theory actually is because if they're right, then they're right not just on the jury instructions, but also on the Price-Anderson. And I would challenge them to point to anywhere in the record where they said their theory did not require proof that we caused the cancer cluster. As they told this court at page 24 of their brief in describing the summary of the claim in the case, plaintiffs allege that the acreage cancer cluster was caused by Pratt & Whitney's radioactive material. That is the core of their claim under either the statutory construct or negligence. And because of that, the claims arise under the Price-Anderson Act and are preempted, foreclosed by their claim. And I would challenge  other evidence that they have that does not prevail that judgment should be entered against them on a Price-Anderson Act claim. I thank you for your attention and ask that you affirm the judgment based on the verdict below. All right. Thank you, Mr. Gallagher. Ms. Hatfield, you reserve some time for rebuttal. Yes, Your Honor. The first thing I'd like to do is I'd like to point Your Honors to question 4 of the jury verdict form because Your Honor, you had suggested that if question 5 had simply ended where it didn't say were transported to locations in the acreage, that the jury might have found that Pratt & Whitney was negligently mishandled its radioactive materials and the jury did in fact find that. That was their answer to question number 4. Our point is that we should have simply then proceeded to question number 6. Did that mishandling cause the cancer cluster? But that could only happen if the dirt ended up on your property, right? Yes, and Your Honor we- So then why not ask that- that seems to be all question 5 is asking is was it actually put on our property? No, that is not all that question 5 is asking. Question 5- question 6 in order to find that it caused the cancer cluster it would have to show that it came to the acreage not on these people's properties and not everywhere through the acreage. And that doesn't say that. It says locations in the acreage. But the difference between what you're saying question 5 says and what it says and also question 1 is that it includes a reasonable- I just read it. I'm only reading it. It says facility were transported to locations in the acreage. It doesn't say in anyone's house. It just says that dirt was transported from the facility somehow through whatever route made it to the property and I'm talking about the huge property that we're discussing. It also says as a result of Pratt & Whitney's failure to use reasonable care. Yeah, but the jury already found the reasonable care. That they- on their property. But this question implies that they have to have a reasonable care in the transport and that is a I'm not sure I read it that way. I'm having trouble connecting that as reasonable care meaning just a callback to question 4 to what you're saying which is there's a separate requirement of failure to reasonable care with regard to transport. If you were right, it would read that did the plaintiffs fail to use reasonable care in the transporting? Not as a result of what you already found. Was there- did this dirt end up in the property? I don't believe so, your honor. And the question is not whether you think so, it's whether you know so. If there is a question that the jury could have been confused and I know the jury could have been confused by this because my friend on the other side asked for the insertion of that reasonable care standard in here because he said otherwise there's no way to connect us to the transport as opposed to mere misnegligence. So Judge Legault asked you at the beginning whether this was an abuse of discretion standard and the answer is in formulating verdict forms, we give a lot of deference to the district court. And so we'd have to say that no reasonable judge would have read it and have created this in such a way that no jury could possibly have interpreted any other way than what you're saying. And I'm just- I'm having trouble getting there. If it is a clear misstatement of Florida law, your honor, then that is not true. And this clearly misstates Florida law. There is no reasonable care standard for transport. There is no requirement to show that they had fault in the transport. We not only- For your theory, can we go back to the question? Thank you. The whole first part of the argument was about theory and now you've come back and talked about something else. What was your theory? Was it not that the dirt somehow by somebody ended up in the acreage? Our theory was that the dirt somehow by somebody ended up in the acreage and caused the cancer cluster. Not throughout the acreage. I understand that. And in the attempts to prove that claim- And how is question one wrong when it says that a discharge or other condition of pollution from Pratt & Whitney was released, not that they released it, but was released in the abstract into or upon the acreage in general? How is that not exactly what your theory was? Because the unlawful discharge does not have to be in the acreage. The unlawful discharge simply has to be on their own property. I know, but your theory was that it was their- In other words, that was your whole theory. So all the question is reflecting is the theory that's there. Yes, in the abstract, a violation could have happened that way, although I don't see how you would have been injured by it, but your theory was that the violation happened because dirt from their facility ended up in some way on the acreage property at large. But this doesn't say ended up in some way. Our argument is that it leads the jury to the exact opposite interpretation. To help me now, your theory was that the wrongful remediation took place on their property. Yes, Your Honor. Okay. Had we been able to use our experts, and we do understand that that's an abusive discretion standard, we would have been able to show transport. We don't think we have to. We think the jury instructions clearly misstate the law, but I ask Your Honor to simply review the orders admitting Pratt-Whitney's experts, all of them in one three-page order, and the orders excluding ours, this is simply not the rigorous sort of analysis that was needed or was required under Daubert. And thank you very much for your time. We respectfully request that Your Honor's reverse and remand the case. I think we have your arguments. Thank you. Court is in